# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| DIESEL GRINDING SERVICES, LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>KAP 1972, LLC,<br><br>　　　　　Defendant. | Civil Action No.　2:25-cv-02771-DCN<br><br>**JURY DEMAND HEREIN** |

## COMPLAINT

Plaintiff Diesel Grinding Services, LLC ("DGS" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against KAP 1972, LLC ("KAP" or "Defendant"), states as follows:

### PARTIES, JURISDICTION, AND VENUE

1. DGS is a South Carolina limited liability company with its principal place of business in Sullivan's Island, South Carolina. The sole member of DGS is Edward Mabry III, who is domiciled in South Carolina. Therefore, DGS is a citizen of South Carolina.

2. KAP is a Wisconsin limited liability company with its principal place of business in Ladysmith, Wisconsin. Upon information and belief, the sole member of KAP is Matthew Horton, who is domiciled in Wisconsin. Therefore, KAP is a citizen of Wisconsin.

3. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, as Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Personal jurisdiction over KAP, and venue in this Court, is proper pursuant to Section 8.5 of the Tier 2 Subcontract Agreement between the parties at issue in this lawsuit, which provides that "[a]ll disputes arising under this Agreement shall be brought in the state or federal courts located in South Carolina" and that "Subcontractor [KAP] consents to the personal jurisdiction of the above courts."

## FACTUAL BACKGROUND

5. DGS and KAP entered into a Tier 2 Subcontract Agreement ("Agreement") with an effective date of January 28, 2025, pursuant to which DGS agreed to perform vegetative debris grinding services at a site in Dublin, Georgia for KAP (the "Services"). A true and accurate copy of the Agreement is attached as **Exhibit 1**.

6. KAP is a tier 1 subcontractor for Precision Pipeline, LLC ("Precision") pursuant to a subcontract agreement dated January 29, 2025 ("Master Agreement"). A true and accurate copy of the Master Agreement is attached as **Exhibit 2**.

7. Section 2.1 of the Agreement states that "DGS shall be entitled to compensation for the performance of the Services as stated on Exhibit A hereto. DGS's compensation will be based on direct labor days charged at fixed labor rates."

8. Per Exhibit A to the Agreement, KAP was obligated to "pay DGS at a rate of $6,000 per day for any day in which DGS's grinders and supporting equipment are performing the Services," and to "pay DGS at a rate of $3,000 per day for any day in which DGS's grinders and supporting equipment are not performing the Services."

9. Under Section 2.2 of the Agreement, "[p]ayment for the Services is due as stated on Exhibit A" to the Agreement.

10.     Per Exhibit A to the Agreement, KAP "will make a 3-week progress payment to DGS of all sums due and payable to DGS for Services performed from the Effective Date to the date that marks the third week of DGS providing the Services, which date is expected to be February 20, 2025."

11.     Exhibit A to the Agreement further states that "[a]ll remaining monies due and payable to DGS after the 3-week progress payment is made shall be paid once [KAP] is paid by Contractor for completion of the Job."

12.     Section 2.3 of the Agreement states that KAP "shall reimburse DGS for any expenses and costs it incurs to collect any amounts due to DGS under this Agreement, including reasonable attorneys' fees."

13.     In Section 4.2 of the Agreement, KAP represented and warranted that it had "sufficient funds and credit to pay currently all costs, expenses, and invoices submitted for payment to [KAP] by DGS in connection to DGS's performance of Services without resorting to earnings for work performed by [KAP] under the Master Agreement."

14.     Commencing on January 28, 2025, DGS provided the Services to KAP.

15.     DGS requested a progress payment from KAP on February 24, 2025, totaling $232,000 for the Services provide by DGS up to that date.

16.     KAP did not make the progress payment, as required under Section 2.2 and Exhibit A to the Agreement.

17.     Accordingly, on March 3, 2025, DGS sent KAP a letter notifying KAP that it was in material breach of the Agreement and demanding that KAP immediately pay $296,000 for the Services provided by DGS up to that date. A true and accurate copy of the March 3, 2025, demand letter is attached as **Exhibit 3**.

18. KAP did not make payment in response to the March 3, 2025, demand letter.

19. Upon information and belief, KAP was paid by Precision for the completion of the job on March 18, 2025.

20. DGS has continued to demand payment from KAP, but KAP has refused to pay DGS.

21. DGS is currently owed $312,000 for the Services it provided to KAP, accounting for several additional days of work at the Dublin site that DGS performed following the issuance of the March 3, 2025, demand letter, as reflected in the spreadsheet attached as **Exhibit 4**.

## COUNT ONE
### (Breach of Contract)

22. DGS incorporates the preceding paragraphs as if fully re-alleged herein.

23. The Agreement constitutes a valid and binding contract between DGS and KAP.

24. DGS fully performed its obligations under the Agreement by providing the contractually required vegetative debris grinding services.

25. KAP breached the Agreement by failing to pay for DGS's vegetative debris grinding services when due.

26. As a result of KAP's breach, DGS has suffered damages in the amount of $312,000.

27. KAP is further obligated, undersection 2.3 of the Agreement, to reimburse DGS for its expenses and costs incurred to collect the amounts due to DGS under the Agreement, including DGS's reasonable attorneys' fees.

## COUNT TWO
### (Unjust Enrichment – Asserted in the Alternative)

28. DGS incorporates the preceding paragraphs as if fully re-alleged herein.

29. DGS conferred a benefit upon KAP by providing vegetative debris grinding services to KAP.

30. KAP realized the benefit of the vegetative debris grinding services provided by DGS.

31. It is inequitable and unfair for KAP to retain the benefit of the vegetative debris grinding services provided by DGS without paying for the value of those services.

32. As a result of KAP's unjust retention of the benefit of DGS's vegetative debris grinding services without paying for the value of those services, DGS has been damaged.

## PRAYER FOR RELIEF

**WHEREFORE**, DGS respectfully requests that this Court grant the following relief:

A. An award of monetary damages totaling $312,000, plus pre-judgment and post-judgment interest;

B. An award of costs, expenses, and attorneys' fees; and

C. For such other and further relief as the Court may deem just and proper.

## JURY DEMAND

DGS demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: April 2, 2025                                Respectfully Submitted,

*/s/ Adam J. Hegler*
Adam J. Hegler (SC Bar No. 100115)
NELSON MULLINS RILEY & SCARBOROUGH LLP
1320 Main Street, 17th Floor
P.O. Box 11070 (29211-1070)
Columbia, SC 29201
Phone: 803-799-2000    Fax: 803-256-7500
adam.hegler@nelsonmullins.com

*Attorney for Diesel Grinding Services, LLC*

5